UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

R.J.S.V.,

             Petitioner,

    v.

JULIO HERNANDEZ et al.,

             Respondent.

CASE NO. 2:26-cv-02148-LK

ORDER GRANTING IN PART AND
DENYING IN PART PETITION FOR
HABEAS CORPUS

This matter comes before the Court on R.J.S.V.'s petition for a writ of habeas corpus, Dkt. No. 1, and motion to proceed under true initials, Dkt. No. 5. For the reasons described below, the Court grants R.J.S.V.'s motion and grants in part and denies in part his habeas petition.[1]

## I.      BACKGROUND

R.J.S.V., a native and citizen of Venezuela, has been detained since October 18, 2025 at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Dkt. No. 14 at 1, 3. R.J.S.V. first entered the United States in August 2023 near El Paso, Texas, where United States Border Patrol encountered him, charged him as inadmissible, and "referred him to United States Citizenship and Immigration Services ('USCIS') for a credible fear interview." *Id.* at 1–2. USCIS

---

[1] The Court declines to hold an evidentiary hearing because the record is sufficient for adjudication of the petition. *See Owino v. Napolitano*, 575 F.3d 952, 954 (9th Cir. 2009) (holding that "the district court must hold an evidentiary hearing" where "the record is insufficient to decide whether [the petitioner's] detention is authorized").

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR HABEAS CORPUS - 1

determined he did not have a credible fear, and the Department of Homeland Security ("DHS") removed him from the United States on an order of expedited removal later in August 2023. *Id.* at 2; *see also* Dkt. No. 15-1 (order).

Near the end of December 2023, R.J.S.V. entered the country without inspection again, and again was encountered by Border Patrol officers, who issued him a "Notice of Intent/Decision to Reinstate Prior Order" of removal and took him into custody. Dkt. No. 14 at 2; Dkt. No. 15-2 (notice). On February 29, 2024, Immigration and Customs Enforcement ("ICE") Enforcement and Removal Operations ("ERO") released R.J.S.V. on an Order of Supervision ("OSUP"). Dkt. No. 14 at 2; Dkt. No. 3-3 (OSUP). The OSUP stated: "Because the agency has not effected your deportation or removal during the period prescribed by law, it is ordered that you be placed under supervision and permitted to be at large," provided that, among other things, R.J.S.V. would "not travel outside Virginia for more than 48 hours without first having notified this agency office of the dates and places, and obtaining approval from this agency office of such proposed travel." Dkt. No. 3-3 at 2.

At the time of his release, R.J.S.V. was living in Northern Virginia, Dkt. No. 14 at 2–3, and avers that he "struggled with housing insecurity" because he "could not work or afford anywhere to live"; he "liv[ed] in the streets and feared for [his] safety," Dkt. No. 17 at 2. Nevertheless, R.J.S.V. attended his first ICE check-in in April 2024. Dkt. No. 2 at 3; Dkt. No. 3-3 at 3 ("Personal Report Record" section of OSUP). R.J.S.V. again checked in with ICE on December 16, 2024, this time in Portland, Oregon. Dkt. No. 2 at 3; Dkt. No. 3-3 at 3. ICE instructed him to check in again on December 1, 2025. Dkt. No. 2 at 3; Dkt. No. 3-3 at 3; *see* Dkt. No. 14 at 3 ("In December 2024, ERO discovered that Petitioner had moved from Virginia to Oregon[.]").[2]

---

[2] Deportation Officer Kurtis Reed states in full: "In December 2024, ERO discovered that Petitioner had moved from Virginia to Oregon without seeking ERO's permission pursuant to the conditions in his OSUP." Dkt. No. 14 at 3. R.J.S.V. seeks to strike this paragraph because it is either hearsay or violates the best evidence rule. Dkt. No. 16 at 8–

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR HABEAS CORPUS - 2

On October 18, 2025, at around 11:15 A.M., DHS officers pulled R.J.S.V. over while he was driving, examined his driver's license, and arrested him. Dkt. No. 14 at 3; Dkt. No. 2 at 3; Dkt. No. 3-2 at 4 (I-213 form recounting arrest). The officers "transported [him] to Vancouver, Washington for case processing." *Id.* R.J.S.V. avers that, during the arrest, the officials did not tell him why he was being arrested or where they were taking him. Dkt. No. 2 at 3–4. He further asserts that the officers processed him for detention in "an empty parking lot," told him he could not call his lawyer until he arrived at NWIPC, and told him that they were revoking his OSUP, but did not tell him "why they were revoking [his OSUP] or give [him] any papers at that time." *Id.* at 4. He avers he "was not told that [he] could present any documents" and that he "did not have his OSUP physically with [him] to show officers." Dkt. No. 17 at 3. According to R.J.S.V., he was given a form in English that he "could not read or understand" in the parking lot after an officer talked to him about revoking his OSUP and told him that he "had to write out why they should not revoke[] [his] OSUP." *Id.* R.J.S.V. filled out the informal interview response form in the parking lot, *id.*, stating (in Spanish) that ICE should not terminate his OSUP because, among other things, he was behaving well and did not intend to stop appearing as required, Dkt. No. 15-3 at 5.

Later that day, the officers transported R.J.S.V. to the NWIPC, where he has been detained since. Dkt. No. 14 at 3. That same day, ERO served R.J.S.V. with a "Notice of Revocation of Release." *Id.*; *see also* Dkt. No. 3-4; Dkt. No. 15-3 at 2–3. Officer Reed avers that "the OSUP was revoked for moving residences without permission." Dkt. No. 14 at 3 ("[T]here was no record of Petitioner reporting to ERO in Portland, OR, the place of his residence."). However, the notice provided to R.J.S.V. does not mention moving without permission; rather, it states:

---

9. The Court can consider this evidence because it can "be presented in a form that would be admissible" at a hearing or trial. Fed. R. Civ. P. 56(c)(2); *see also id.*, advisory comm. note to 2010 Amendments (proponent of evidence can either "show that the material is admissible as presented or to explain the admissible form that is anticipated" at trial).

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR HABEAS CORPUS - 3

This decision has been made based on a review of your file and/or your personal interview on account of changed circumstances in your case. ICE has determined that there is a significant likelihood of removal in the reasonably foreseeable future in your case.

Dkt. No. 15-3 at 2.[3] Also on October 18, 2025, "ERO conducted an informal interview with [R.J.S.V.] with regard to the OSUP revocation." Dkt. No. 14 at 3. R.J.S.V. "made a written statement in Spanish but did not provide any documents." *Id.*; *see also* Dkt. No. 15-3 at 5. R.J.S.V. avers that he "did not receive the documents regarding the revocation of [his OSUP] until a few days after arriving to NWIPC." Dkt. No. 2 at 4.

On December 11, 2025, UCSIS conducted a reasonable fear interview with R.J.S.V. and determined that he lacked reasonable fear. Dkt. No. 14 at 3. On January 13, 2026, an immigration judge ("IJ") vacated that decision and ordered R.J.S.V. into "withholding only" proceedings. *Id.* On March 9, 2026, an IJ denied R.J.S.V.'s applications for withholding of removal and protection under the Convention Against Torture ("CAT") and returned him to DHS for removal. Dkt. No. 15-5 at 4. R.J.S.V. appealed the denial to the Board of Immigration Appeals ("BIA"). Dkt. No. 14 at 3. On April 7, 2026, an IJ conducted a bond hearing and denied R.J.S.V. bond, finding that "DHS had met its burden by clear and convincing evidence" to show that R.J.S.V. was a flight risk. *Id.* at 3–4; *see also* Dkt. Nos. 15-4, 15-5. R.J.S.V. appealed the bond denial to the BIA, where it remains pending. Dkt. No. 14 at 4.

On June 18, 2026, R.J.S.V. filed a petition for a writ of habeas corpus, Dkt. No. 1, and a motion to proceed under true initials, Dkt. No. 5. On July 7, Respondents[4] filed a return. Dkt. No.

---

[3] Declarant Peter Clark includes what appear to be three separate documents in a single exhibit: (1) a "Notice of Revocation of Release" and proof of service thereof, (2) an "Order of Supervision Revocation Assessment," and (3) a form titled "Alien Informal Interview Upon Revocation of Order of Supervision under 8 C.F.R. § 241.4(1); 8 C.F.R. § 241.13(i)." Dkt. No. 15-3.

[4] Although Bruce Scott, the warden of the NWIPC, has not appeared in this case, (1) the purpose of naming the petitioner's custodian is to effectuate injunctive relief where appropriate, *see Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (the custodian has "the power to produce the body of [the petitioner] before the court or judge," such that "he may be liberated if no sufficient reason is shown to the contrary" (citation modified)); and (2) federal respondents

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR HABEAS CORPUS - 4

13. Respondents did not oppose the motion to proceed under true initials. On July 13, R.J.S.V. filed a traverse. Dkt. No. 16.

## II.   MOTION TO PROCEED UNDER INITIALS

R.J.S.V. moves pursuant to Federal Rule of Civil Procedure 5.2(e) for permission "to proceed in this habeas corpus litigation using his true initials, rather than his full name, so as to protect his identity from public disclosure." Dkt. No. 5 at 2. He contends that this "lawsuit involves a meaningful risk of retaliation both from the persecutors he fled in Venezuela" and the use of "his initials rather than his full name is thus necessary to protect [him] and his family." *Id.*

Federal Rule of Civil Procedure 10 requires that every complaint include the name of all parties. Fed. R. Civ. P. 10(a). Thus, "[t]he normal presumption in litigation is that parties must use their real names." *Doe v. Kamehameha Schs./Bernice Pauahi Bishop Est.,* 596 F.3d 1036, 1042 (9th Cir. 2010); *see also Kamakana v. City of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (recognizing a "general right to inspect and copy public records and documents, including judicial records and documents" (citation modified)). And Federal Rule of Civil Procedure 17(a)(1) requires that "[a]n action must be prosecuted in the name of the real party in interest." However, "a party may preserve his or her anonymity in judicial proceedings in special circumstances when the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity," including where "nondisclosure of the party's identity is necessary to protect a person from harassment, injury, ridicule or personal embarrassment." *Does I thru XXIII v. Adv. Textile Corp.*, 214 F.3d 1058, 1067–68 (9th Cir. 2000) (citation modified). Courts generally allow a party to proceed anonymously in three circumstances: "(1) when identification creates a risk of retaliatory physical or mental harm; (2) when anonymity is

---

often represent the warden's interests, as they do in this case, *see Doe v. Garland*, 109 F.4th 1188, 1196 (9th Cir. 2024) ("Even in cases where private contract wardens are named as respondents, the government can and has stepped in to defend its interest in keeping petitioners detained.").

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR HABEAS CORPUS - 5

necessary to preserve privacy in a matter of sensitive and highly personal nature; and (3) when the anonymous party is compelled to admit his or her intention to engage in illegal conduct, thereby risking criminal prosecution." *Id.* at 1068 (citation modified).

The Court finds that identification here could create a risk of retaliatory harm. R.J.S.V. contends that he faced "death threats and persecution based on his political opinions and religion" in Venezuela, and that revealing his identity and personal information relating to his immigration case on a public docket could expose him to additional risk. Dkt. No. 5 at 4. Given the fact that R.J.S.V.'s withholding only and CAT claims are still pending, the Court finds R.J.S.V.'s need for anonymity outweighs any prejudice to Respondents and the public's interest in knowing his identity. *See Doe v. Andrews*, No. 1:25-CV-00506-SAB-HC, 2025 WL 1856591, at *3 (E.D. Cal. June 26, 2025) ("Courts have granted motions to file pseudonymously based on CAT claims and the petitioners' fears of persecution and retaliation should their identities be revealed.") (collecting cases).

### III.    MERITS DISCUSSION

In counts 1 and 4 of his habeas petition, R.J.S.V. claims that Respondents' revocation of his OSUP violated his Fifth Amendment right to procedural due process and was unlawful under the Administrative Procedure Act ("APA"), the Immigration and Nationality Act ("INA"), and federal regulations, because Respondents did not follow the requisite procedures and did not revoke his OSUP for a valid reason. Dkt. No. 1 at 19–21, 25–27. In counts 2 and 3, R.J.S.V. claims that his now ten-month-long detention has become indefinite because his removal is not significantly likely in the reasonably foreseeable future, in violation of the APA, INA, and his Fifth Amendment substantive due process rights. *Id.* at 21–25 (citing *Zadvydas v. Davis*, 533 U.S. 678 (2001)). He requests that the court order that Respondents immediately release him from custody and return his property to him, or, in the alternative, order a "second, constitutionally

adequate bond hearing[.]" *Id.* at 28–29. He also requests permanent injunctive relief requiring Respondents, "before any future re-detention," to either provide him "a pre-deprivation hearing before a neutral arbitrator at which Respondents bear the burden of establishing, by clear and convincing evidence, that [he] is a particular danger to the community or that custody is appropriate to enforce an existing removal order to a named third country" or "written notice . . . of the reasons for his re-detention at least two weeks in advance." *Id.* at 28.

Respondents argue that R.J.S.V.'s detention "comports with substantive due process" because he has "failed to demonstrate a good reason to believe that there is no significant likelihood of his removal in the reasonably foreseeable future." Dkt. No. 13 at 6–7. They also argue that R.J.S.V. "fails to demonstrate that his OSUP revocation did not comport with due process or was inconsistent with ICE's procedural regulations" and that his revocation complied with procedural due process requirements. *Id.* at 7–10. Finally, they argue that the APA claims should be dismissed for lack of subject matter jurisdiction. *Id.* at 10.

A.    **Legal Standard**

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district

court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas*, 533 U.S. at 687.

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "The Fifth Amendment guarantees due process in deportation proceedings." *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001). "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693; *see also Demore v. Kim*, 538 U.S. 510, 523 (2003) (recognizing that Fifth Amendment due process protections extend to deportation proceedings, but noting that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process").

**B.    R.J.S.V. Has Established a Due Process Violation**

As noted above, R.J.S.V. alleges that Respondents failed to provide him the process due under the applicable statute and regulations, as well as the constitution.

1.    Process Required by Statute

The parties agree that R.J.S.V. is in the post-removal period and that he is detained pursuant to Section 1231(a)(6) because he is subject to a final order of removal. Dkt. No. 1 at 2; Dkt. No. 13 at 2; 8 U.S.C. § 1231(a)(5); *see also Padilla-Ramirez v. Bible*, 882 F.3d 826, 831–33 (9th Cir. 2018) (holding that reinstated removal orders are administratively final for purposes of detention). When a final order of removal has been entered, a noncitizen enters a 90-day "removal period." 8 U.S.C. § 1231(a)(1). To ensure a noncitizen's presence for removal and to protect the community from noncitizens who may present a danger, Congress mandated detention during the 90-day "removal period." 8 U.S.C. § 1231(a)(2). The Ninth Circuit has held "the period of detention under § 1231(a)(2) . . . passes constitutional scrutiny." *Khotesouvan v. Morones*, 386 F.3d 1298, 1301

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR HABEAS CORPUS - 8

(9th Cir. 2004). After that 90-day removal period concludes—in what is referred to as the "post-removal period"— the government's detention authority shifts to Section 1231(a)(6). *See* 8 U.S.C. § 1231(a)(6); *Johnson v. Guzman Chavez*, 594 U.S. 523, 528–29 (2021). Section 1231(a)(6) authorizes ICE to continue detention of noncitizens after the expiration of the removal period. 8 U.S.C. § 1231(a)(6). Although there is no statutory time limit on detention pursuant to Section 1231(a)(6), the Supreme Court has held that a noncitizen may be detained only "for a period reasonably necessary to bring about that [noncitizen's] removal from the United States." *Zadvydas*, 533 U.S. at 689. "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. "[T]he due process analysis attaches in the post-removal period[.]" *Khotesouvan v. Morones*, 386 F.3d 1298, 1301 (9th Cir. 2004).

A noncitizen's release under Section 1231(a)(6) can be revoked (1) where the noncitizen violates his conditions of release, and (2) where "on account of changed circumstances, the Service determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(1)–(2). Alternatively, "[t]he Executive Associate Commissioner shall have authority, in the exercise of discretion, to revoke release and return to [DHS] custody [a noncitizen] previously approved for release under the procedures in this section," and "[a] district director may also revoke release of [a non-citizen] when, in the district director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner." 8 C.F.R. § 241.4(l)(2). Discretionary revocation is permitted when, in the opinion of the revoking official:

> (i) The purposes of release have been served;
>
> (ii) The [noncitizen] violates any condition of release;
>
> (iii) It is appropriate to enforce a removal order or to commence removal proceedings against [a noncitizen]; or

(iv) The conduct of the [noncitizen], or any other circumstance, indicates that release would no longer be appropriate.

*Id.*

Upon revocation, the noncitizen "will be notified of the reasons for revocation of his . . . release," 8 C.F.R. § 241.13(i)(3), and DHS "will conduct an initial informal interview promptly after his . . . return to [DHS] custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification," including by allowing the noncitizen to "submit any evidence or information that he . . . believes shows there is no significant likelihood he . . . [will] be removed in the reasonably foreseeable future, or that he . . . has not violated the order of supervision." *Id.*

Here, the Court finds that Respondents' contention that "ICE provided [R.J.S.V.] with written notice of the specific reasons for its determination" to revoke his supervision, Dkt. No. 13 at 9, is unsupported by the record. Specifically, although Respondents contend that R.J.S.V.'s OSUP was revoked due to his unauthorized move, *id.* at 1–2, 8–9, that rationale appears only in the "Order of Supervision Revocation Assessment," which appears to be an internal ICE record. Dkt. No. 15-3 at 4. Officer Reed does not contend that this order was provided to R.J.S.V.; he states only that "ERO served [R.J.S.V.] with a Notice of Revocation of Release." Dkt. No. 14 at 3; *see also* Dkt. No. 15-3 at 3. The Notice of Revocation of Release makes no mention of an unauthorized move. Dkt. No. 15-3 at 2. And while the Notice does state that "ICE has determined that there is a significant likelihood of removal in the reasonably foreseeable future," *id.*, Respondents do not present any evidence supporting a change in the likelihood of R.J.S.V.'s removal during his 20 months on release, nor have they presented any post hoc documentation supporting imminence of his removal. *See generally* Dkt. Nos. 13–15. Indeed, the only reason Officer Reed provides for ICE's revocation of R.J.S.V.'s OSUP is the unauthorized move; his

declaration does not even mention the likelihood of R.J.S.V.'s removal. *See generally* Dkt. No. 14. The Court accordingly finds that R.J.S.V. was not "notified of the reasons for revocation of his . . . release" or afforded "an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.13(i)(3). In other words, Respondents did not provide R.J.S.V. with the process due to him under the applicable statute and implementing regulations governing revocation of an OSUP.

### 2.    Due Process Requirements

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). In analyzing a procedural due process claim, the court engages in a two-step analysis: First, the court determines whether the detainee "was deprived of a constitutionally protected liberty or property interest." *Johnson v. Ryan*, 55 F.4th 1167, 1179 (9th Cir. 2022). Second, the court examines "whether that deprivation was accompanied by sufficient procedural protections" using the test enunciated in *Mathews v. Eldridge*. *Id.* at 1179–80.

### a.    *Constitutionally Protected Liberty Interest*

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty th[e] [Due] Clause protects." *Zadvydas*, 533 U.S. at 690. Noncitizens "who have once passed through our gates, even illegally," are entitled to "proceedings conforming to traditional standards of fairness encompassed in due process of law." *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953)); *see also Zadvydas*, 533 U.S. at 693. Although merely "set[ting] foot on U.S. soil" may not be sufficient to "effect[ ] an

entry" and trigger due-process protections for admissions decisions if a noncitizen is detained shortly thereafter, *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139–40 (2020), if a noncitizen "gain[s a] foothold in the United States," *Kaplan v. Tod*, 267 U.S. 228, 230 (1925), or "begins to develop . . . ties" in this country, "his constitutional status changes accordingly," and he "has a right to due process," *Landon v. Plasencia*, 459 U.S. 21, 32–33 (1982); *see also Yamataya v. Fisher*, 189 U.S. 86, 100–01 (1903) (distinguishing noncitizens entitled to due process from those "who ha[ve] been here for too brief a period to have become, in any real sense, a part of our population"). Put another way, "[noncitizens] who have established connections in this country have due process rights in deportation proceedings[.]" *Thuraissigiam*, 591 U.S. at 107.

Here, after detaining R.J.S.V. for roughly two months from December 2023 to February 2024, DHS released him on an order of supervision. Dkt. No. 14 at 2; Dkt. No. 3-3. Over the next 20 months, R.J.S.V. developed a community. He worked as an independent contractor pursuant to a USCIS employment authorization, attended church, and met the woman who would become his fiancé and the mother of his child. Dkt. No. 2 at 3; Dkt. No. 15-5 at 4–5 (noting that R.J.S.V.'s daughter is a United States citizen); Dkt. No. 3-5 at 2. R.J.S.V. has no criminal history other than his illegal entries into the United States. Dkt. No. 2 at 2. He is entitled to at least those protections described above with respect to his protected liberty interest in remaining out of immigration custody.

       b.     *Procedural Protections*

To determine what procedures are constitutionally sufficient to protect petitioners' liberty interest, courts analyze the three *Mathews* factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the

fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335. In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that *Mathews*' three-part test applies in "the immigration detention context," 53 F.4th 1189, 1206–07 (9th Cir. 2022), and district courts have applied the *Mathews* test in that context, *see, e.g.*, *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1033 (N.D. Cal. 2025). Respondents argue that the "*Mathews* test demonstrates that [R.J.S.V.'s] detention is consistent with his due process rights." Dkt. No. 13 at 7.

As set forth above, the applicable regulations provide that "[u]pon revocation" of a release order, a non-citizen "will be notified of the reasons for revocation of his or her release" and will be afforded an initial informal interview "promptly after his or her return to . . . custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. §§ 241.4(l)(1), 241.13(i)(3). "The procedures set forth in both 8 C.F.R. § 241.4 and 8 C.F.R. § 241.13 are intended to provide noncitizens with fundamental due process protections that courts have found to be constitutionally required." *Hall v. Nessinger*, No. 25-CV-667-JJM-PAS, 2026 WL 18583, at *4 (D.R.I. Jan. 2, 2026); *see also Santamaria Orellana v. Baker*, No. CV 25-1788-TDC, 2025 WL 2444087, at *6 (D. Md. Aug. 25, 2025) (8 C.F.R. § 241.4 "plainly provide[s] due process protections to [noncitizens] following the removal period as they are considered for continued detention, release, and then possible revocation of release by, among other things, requiring that only certain designated officials make custody determinations; mandating that a noncitizen receive a copy of any decision to release or detain that individual; establishing criteria and factors applicable to detention, release, and revocation determinations; and requiring certain procedural safeguards upon revocation to allow a noncitizen to have an opportunity to be heard to contest the reasons for revocation, including informal interviews and custody reviews").

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR HABEAS CORPUS - 13

"Therefore, ICE violates a noncitizen's due process rights when the agency re-detains [hi]m and fails to comply with these revocation procedures." *Hall*, 2026 WL 18583, at *4.

With respect to the first *Mathews* factor, as noted above, the Court finds that R.J.S.V. has a liberty interest in being free from detention in light of his previous release on OSUP and the ties he has developed in the community. *See, e.g., Francisco Lorenzo v. Bondi*, No. 2:25-cv-02660-LK, 2026 WL 237501, at *5 (W.D. Wash. Jan. 29, 2026); *Singh v. Bondi*, No. C26-0477-KKE, 2026 WL 586230, at *2 (W.D. Wash. Mar. 2, 2026); *Barraza Enriquez v. Mullin*, No. 2:25-CV-02352-LK, 2026 WL 947931, at *6 (W.D. Wash. Apr. 8, 2026). This factor weighs in favor of R.J.S.V.

As to the second *Mathews* factor, Respondents contend that the "existing procedures for OSUP revocation are constitutionally sufficient" and that R.J.S.V. "has failed to demonstrate that his detention violates ICE's regulations." Dkt. No. 13 at 8. R.J.S.V. contends that "the process afforded [him] was 'performative' at best, and a 'sham' at worst." Dkt. No. 16 at 36 (quoting *Alfonso v. Bondi*, No. 2:25-CV-02748-TL, 2026 WL 395326, at *6 (W.D. Wash. Feb. 12, 2026)). As discussed above, 8 C.F.R. §§ 241.4(l) and 241.13(i) required that Respondents notify R.J.S.V. of the reasons for revocation of his OSUP and provide him an informal interview "to respond to the reasons for revocation stated in the notification," and Respondents did not do so. Had Respondents provided this requisite process to R.J.S.V., including allowing him to "submit any evidence or information that he . . . believe[s] shows . . . that he . . . has not violated the order of supervision," he very well could have produced his OSUP documentation, Dkt. No. 3-3, which indicates that he reported to the Portland ERO office in December 2024, in contravention of Officer Reed's assertion that "there was no record of [R.J.S.V.] reporting to ERO in Portland, OR," Dkt. No. 14 at 3. Furthermore, the fact that ICE knew of R.J.S.V.'s relocation in December 2024 and simply directed him to report again in December 2025, rather than revoking his OSUP, coupled

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR HABEAS CORPUS - 14

with the 10-month lapse of time between R.J.S.V.'s alleged violation and his arrest, undermine ICE's rationale for the revocation and raise concerns that the arrest was not in fact motivated by the alleged violation. *See Balwan v. Bondi*, No. 2:26-CV-00248-LK, 2026 WL 497098, at *7 (W.D. Wash. Feb. 23, 2026). And even if the delay was due to lack of resources or bureaucratic disconnect on the part of the government, the Court finds that "the challenges facing under-resourced and disjointed agencies underscore rather than undermine the need for robust procedural safeguards[.]" *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025).

Additionally, even accepting that the real reason for the revocation was changed circumstances increasing the likelihood of near-term removal—and not, as Officer Reed contends, Dkt. No. 14 at 3, the alleged OSUP violation—the lack of detail in the Notice of Revocation of Release as to what constituted changed circumstances would make it impossible for anyone to meaningfully "respond to the reasons for revocation stated in the notification." 8 C.F.R. §§ 241.4(l); 241.13(i); *see also Saley v. Scott*, No. 2:26-CV-00797-JNW, 2026 WL 914810, at *4 (W.D. Wash. Apr. 3, 2026) ("boilerplate language" in OSUP revocation gave petitioner "no information about the factual basis for revoking his OSUP and no basis to provide a meaningful response"); *Alfonso*, 2026 WL 395326, at *5 (petitioner not afforded due process when "perfunctory and incomplete" informal interview did not provide meaningful opportunity to submit evidence rebutting stated reasons for revocation).

The Court finds that the risk of erroneous deprivation is significant where, as here, the government failed to follow its own procedures for revocation of release, thus depriving the noncitizen of process due prior to revocation. *See Asfestani v. Current or Acting Field Off.*, No. 1:25-CV-1562-SCR, 2025 WL 3677321, at *6 (E.D. Cal. Dec. 18, 2025) ("[N]umerous courts have granted habeas relief for ICE's failure to comply with post-order detention regulations." (collecting cases)); *Truong v. Noem*, No. 25-cv-2597-JES-MMP, 2025 WL 2988357, at *6 (S.D.

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR HABEAS CORPUS - 15

Cal. Oct. 22, 2025) (Courts "have found that when ICE fails to follow its own regulations in revoking release, the detention is unlawful, and the petitioner's release must be ordered." (collecting cases)); *Santamaria Orellana v. Baker*, No. CV 25-1788-TDC, 2025 WL 2444087, at *6 (D. Md. Aug. 25, 2025) (regulations governing revocation of release "are intended to provide due process in that they are fairly construed to be part of a procedural framework 'designed to ensure the fair processing of an action affecting an individual,' such that when they are not followed, prejudice is presumed" (citation modified)). This *Mathews* factor also weighs in R.J.S.V.'s favor.

The third *Mathews* factor also weighs in R.J.S.V.'s favor. "[T]he government's interest in efficient administration of the immigration laws at the border is not impermissibly burdened by affording the process" laid out in regulation because the government "is required to follow its own regulations." *Albornoz v. Hermosillo*, No. 2:25-CV-02713-LK, 2026 WL 444983, at *6 (W.D. Wash. Feb. 17, 2026).

Based on the foregoing review of the *Mathews* factors, the Court finds that Respondents failed to provide R.J.S.V. with the procedures due to him under the Due Process Clause, and accordingly, his detention is unlawful.[5]

## C.    The Court Denies R.J.S.V.'s Other Requests for Relief

Because the Court grants R.J.S.V.'s request for immediate release, it denies as moot his alternative requests to "issue an order compelling Respondents to provide [him] a second, constitutionally adequate bond hearing at which the Government bears the burden of justifying his detention by clear and convincing evidence[.]" Dkt. No. 1 at 29.

---

[5] Because the Court finds that Respondents violated R.J.S.V.'s due process rights by failing to provide him with at least the process required by regulation, it need not consider his other bases for arguing that his detention is unlawful.

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR HABEAS CORPUS - 16

The Court also denies R.J.S.V.'s two requests to issue permanent injunctive relief preventing his re-detention without either a pre-deprivation hearing or written notice stating "the reasons for his re-detention at least two weeks in advance of any intended re-detention." *Id.* at 28. Where, as here, habeas petitioners raise Due Process claims and have also invoked the Court's jurisdiction under 28 U.S.C. § 1331, the Court has "the authority both to entertain [the petitioner's] constitutional challenges and to grant injunctive relief in response to them," "irrespective of the accompanying habeas petition." *Roman v. Wolf*, 977 F.3d 935, 941–42 (9th Cir. 2020). Importantly, though, "[i]n seeking a permanent injunction, the moving party must convince the court that relief is needed: 'The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive.'" *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003) (quoting *United States v. W.T. Grant Co.,* 345 U.S. 629, 633 (1953)).

R.J.S.V.'s petition does not allege that his re-detention is likely. *See generally* Dkt. No. 1. And without argument or evidence that his unlawful re-detention is likely to occur, his request constitutes nothing more than a "mere possibility" that does not entitle him to relief. *Cummings*, 316 F.3d at 897 (citation modified); *see also Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("Our adversarial system relies on the advocates to inform the discussion and raise the issues to the court."). For this reason, his requests for a permanent injunction are denied.

## IV.    Conclusion

For the reasons stated above, the petition for a writ of habeas corpus, Dkt. No. 1, is GRANTED IN PART and DENIED IN PART, and the Court ORDERS as follows:

(1)    Respondents shall release R.J.S.V. from custody within 24 hours subject to conditions compliant with 8 U.S.C. § 1231(a)(3), and return his personal property to him;

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR HABEAS CORPUS - 17

(2)   The parties shall file a Joint Status Report by July 21, 2026, confirming that R.J.S.V. has been released;

(3)   Petitioner may proceed in this matter with the use of his true initials, R.J.S.V., and all public filings in this case shall refer to Petitioner by his initials, and shall redact his full name, A-file number, and all other directly identifying personal information;

(4)   Any fee petition should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412. *See Michelin v. Warden Moshannon Valley Corr. Ctr.*, 169 F.4th 418, 432 (3d Cir. 2026) (the Equal Access to Justice Act authorizes the award of attorney's fees to petitioners who prevail against the Government in immigration habeas actions); *Daley v. Ceja*, 158 F.4th 1152, 1162 (10th Cir. 2025) (same); *Petition of Hill*, 775 F.2d 1037, 1041 (9th Cir. 1985) (reasoning that an award of fees under EAJA was not necessarily foreclosed for a habeas petition brought by "a nonresident [noncitizen]" in the immigration context). Time spent on work that is "excessive, redundant, or otherwise unnecessary" is not compensable. *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992). For example, attorneys may not seek compensation for time spent developing a habeas petition template when such template was merely re-used in the instant proceeding; only the time spent dedicated to this proceeding is compensable. *See Eve Nevada, LLC v. Derbyshire*, No. 21-0251-LK, 2022 WL 279030, at *10 (W.D. Wash. Jan. 31, 2022).

Dated this 20th day of July, 2026.

Lauren King
United States District Judge

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR HABEAS CORPUS - 18